UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:11-CR-33 |
| | ) | |
| JAMES MARSHALL WOLFE | ) | |

## **REPORT AND RECOMMENDATION**

Defendant is charged in one count of this indictment with possessing marijuana with the intent to distribute; in three counts with possessing various firearms notwithstanding being an unlawful user of illegal drugs; and in one count with possessing firearms in furtherance of the aforementioned drug trafficking charge.

Defendant has filed a motion to suppress at least some of the evidence that will be presented against him. (Doc. 8). This motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. An evidentiary hearing was held on June 2, 2011. The only witnesses who testified were Chris Stine and Michael Barron, both Criminal Investigators with the Johnson City Police Department.

Defendant's motion to suppress apparently attacks only evidence that was seized during a search of defendant's *residence* pursuant to a search warrant issued by Judge James Nidiffer of the General Session Court for Washington County, Tennessee, on March 31, 2011.[1] However, Judge Nidiffer issued a warrant earlier that day to search a package shipped

---

[1] A copy of the warrant, supporting affidavit, and inventory are attached to the United States' response as Document 9-2.

*via* FedEx which necessarily must be discussed to completely understand Judge Nidiffer's second warrant.

On March 31, 2011, Investigator Stine received a phone call from Brian Vicchio, another officer of the Johnson City Police Department who had just completed a stint as a Drug Task Force agent. Officer Vicchio told Investigator Stine that he had just received a phone call from a Drug Task Force officer in Florida who reported that he – i.e., the Florida agent – had just received a tip from a confidential informant that a package likely containing drugs had just been shipped *via* FedEx from Eureka, California to James Ryan at 317 Wilson Avenue in Johnson City.

Investigator Stine obtained the tracking number of that package and ascertained that FedEx was in possession of a package to be shipped to 317 Wilson Avenue, Johnson City. The FedEx driver was contacted, and he confirmed that he had the package in his truck for delivery. Investigator Stine asked the driver to meet him at a location and, before Investigator Stine's arrival, to place the suspect package, and three others similar to it, around the truck.

A trained drug-detection dog was brought to the FedEx truck and allowed to walk around the four packages. The dog alerted three separate times on the same package, the one addressed to James Ryan at 317 Wilson Avenue in Johnson City.

Officer Vicchio appeared before Judge Nidiffer and requested that a warrant issue for a search of the package. Officer Vicchio's affidavit described his phone call from the Florida Drug Task Force agent, and the report to that agent by a confidential informant that a

package containing illegal narcotics was being shipped *via* FedEx from Eureka, California to 317 Wilson Avenue in Johnson City. Officer Vicchio's affidavit further described the officers' confirmation that FedEx had such a package in its possession for delivery to 317 Wilson Avenue. Most importantly of all, his affidavit described the drug dog's alert on the package. Based upon Officer Vicchio's affidavit, Judge Nidiffer issued a warrant to search the package.

Although defendant did not explicitly raise this issue in his motion to suppress, it nevertheless bears noting that a positive alert by a trained narcotics dog on an item, in and of itself, constitutes probable cause to obtain a search warrant to search that item, and probable cause to arrest whomever possesses it. *See, e.g., United States v. Place*, 462 U.S. 696, 707 (1983); *United States v. Reed*, 141 F.3d 644, 649 (6th Cir. 1998).

After obtaining the warrant, the package was opened, revealing three vacuum-sealed bags containing what clearly appeared to be marijuana. Ultimately, it was determined that the three packages contained a total of 7.7 pounds of marijuana with a street value of approximately $50,000.00.

Agent Stine assembled a "team" of plain-clothed investigators and uniformed officers. Stine elected to play the role of the FedEx delivery man, dressed as he was. Other investigators and uniformed officers concealed themselves in the immediate area.

Stine drove up to 317 Wilson Avenue.[2] As Stine walked up to the house carrying the

---

[2]Although this specific address was not known to the Johnson City Police Department, Wilson Avenue itself, according to Stine, is the most notorious high crime area in Johnson City,

package, a man came out of the front door and walked towards Stine, spontaneously saying "Cool." Stine had observed a surveillance camera mounted at the front door, and he assumed the man had seen him walking towards the door and elected to meet him outside.

Stine, or someone on his behalf, had ascertained that the utility services for 317 Wilson Avenue were in the name of James Wolfe, defendant herein.

Stine announced that he had a package to deliver to James Ryan. The man – now known to be defendant – answered that he was not James Ryan, but he nevertheless would sign for the package. Defendant scribbled an illegible signature on a FedEx receipt, and then picked up the package from the sidewalk. The instant defendant took the package into his hands, Stine identified himself as a police officer and arrested defendant. Stine promptly warned defendant of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

Two other investigators, Barron and Richardson, went into the house and conducted a "protective sweep" of the house that lasted 3 to 4 minutes. During the course of that sweep, Barron noticed a handgun in a shoulder holster, hanging on a closet door, and he reported that discovery to Stine.

Stine asked for defendant's consent to search the house, and defendant flatly refused. As a result, Investigators Barron and Richardson secured the house while Stine appeared before Judge Nidiffer to procure a warrant to search the house.

---

known for its drug trafficking and prostitution.

Stine's affidavit submitted to Judge Nidiffer described the 7.7 pounds of marijuana contained in the package designated for delivery to "James Bailey" at 317 Wilson Avenue;[3] that an unidentified male signed for and accepted delivery of the package; that the man ultimately identified himself as James Wolfe; that after Wolfe's arrest, officers checked the house for other suspects and, as they did so, they discovered a handgun lying on the dresser in a bedroom; and that Wolfe, after being advised of his *Miranda* rights, acknowledged that he had one ounce of marijuana in his bedroom, two handguns, and one rifle. Based on that affidavit, Judge Nidiffer issued his warrant that authorized the executing officers to search for and seize (1) illegal controlled substances; (2) marked currency; (3) all books, records and materials, both electronic and paper, used for the selling or exchanging of controlled substances; (4) any proceeds or things of value regarding the sale of controlled substances; (5) any illegally possessed weapons; and (6) illegal drug paraphernalia.

Based upon this second search warrant, the officers searched defendant's residence, during which they discovered numerous firearms, ammunition, digital scales, other drugs, and various drug paraphernalia.

One issue vigorously presented by defendant's counsel concerned the gun or guns observed by Investigators Barron and Richardson as they conducted their protective sweep of defendant's house after his arrest. From his questioning of Investigator Stine, it is apparently counsel's position that a protective sweep was not justified since Investigator

---

[3]The package actually was addressed to James Ryan. The reference to "Bailey" clearly was a srivener's error, and it has absolutely no effect on the probable cause analysis.

Stine had no knowledge that anyone else was in the house. Such an argument, if adopted, would completely eviscerate the principle underlying protective sweeps:

> A "protective sweep" is a quick and limited search of premises, incident to an arrest, conducted to protect the safety of police officers and others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding . . . . Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*United States v. Biggs*, 70 F.3d 913, 915 (6th Cir. 1995).

Here, Investigator Stine had just delivered a package addressed to James Ryan of 317 Wilson Avenue in Johnson City. The individual who met Investigator Stine outside that residence disclaimed being James Ryan, but nevertheless signed for the package and took possession of it. That being so, "James Ryan" himself potentially was in the house, and capable of causing harm. The protective sweep of the premises not only was reasonable under the circumstances, it would have been foolhardy and a dereliction of duty not to have done so.

At this point it is appropriate to discuss the inconsistency between Investigator Stine's affidavit submitted to Judge Nidiffer and his testimony before this court. In his testimony, Investigator Stine said that he was told by Agent Barron of a handgun in a shoulder holster, hanging on a closet door. In his affidavit, however, he refers to a handgun lying on a dresser. When asked by the court to explain that inconsistency, Investigator Stine more or less said he could not explain it. The inconsistency, however, is less than inconsequential. Even if all references to the observation of any guns in the house during the protective sweep are

6

excised from the affidavit – indeed, if nothing was contained in the affidavit beyond defendant's acceptance of the package of marijuana – there still exists probable cause to search his residence: "In the case of drug dealers, evidence is likely to be found where there dealers live." *United States v. Davidson*, 936 F.2d 856 (6th Cir. 1991); *see also, United States v. Goward*, 2006 WL 1952282 (6th Cir. 2006).

Defendant also complains that there was no probable cause to search for "electronic" i.e., digital, documents, or for weapons.

Investigator Stine's affidavit says nothing about book and records related to drug dealing. All the paperwork regarding this search warrant, including the search warrant itself, consists of those ubiquitous pre-printed state forms which, to be charitable, invite motions to suppress when relied upon in a federal prosecution. But, this generalized criticism aside, Investigator Stine's affidavit revealed to Judge Nidiffer that defendant had just accepted 7.7 pounds of marijuana, which clearly was intended for distribution and sale, not for personal use.[4] That being so, Judge Nidiffer aptly authorized a search for records of illegal drug sales since it is safe to assume that a narcotics "businessman" necessarily would keep records regarding sales and receipts.

As far as Judge Nidiffer's authorization to search for and seize firearms is concerned, the Sixth Circuit has recognized that guns are tools of a drug trafficking trade; *see, e.g.,*

---

[4]There are 28 grams in an ounce, and 16 ounces in a pound. Thus, there were 3449.6 grams of marijuana in the package. According to Answers.com, the average marijuana joint contains l/2 gram. Therefore, 7.7 pounds of marijuana would yield two joints every day for 9-l/2 years.

7

*United States v. Marino*, 658 F.2d 1120, 1123 (6th Cir. 1981); they go "hand in hand," *United States v. Scott*, 2007 WL 3101865 (6th Cir. 2007). Probable cause to search for evidence of drug trafficking implicitly carries with it probable cause to search for weapons to protect the trade.

For all the foregoing reasons, it is respectfully recommended that defendant's motion to suppress (Doc. 8) be denied.[5]

Respectfully submitted,

    s/ Dennis H. Inman
United States Magistrate Judge

---

[5]Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).